**FRIENDLY FRUIT, INC. d/b/a SID Wainer & Son, Plaintiff,**

v.

**SODEXHO, INC. and Sodexho Operations, LLC, Defendants.**

**Civil Action No. 06–10859–NMG.**

United States District Court, D. Massachusetts.

Nov. 28, 2007.

Martin F. Gaynor, III, Brian M. Haney, Harry L. Manion, III, Kenneth J. Martin, Kerri L. Randall, Cooley Manion Jones LLP, Boston, MA, for Defendants.

Ronald M. Jacobs, James F. Kavanaugh, Jr., Conn, Kavanaugh, Rosenthal, Peisch & Ford, LLP, Boston, MA, for Plaintiff.

## MEMORANDUM & ORDER

GORTON, District Judge.

The current case arises out of a business dispute between the plaintiff, Friendly Fruit, Inc. ("Friendly Fruit") and defendants Sodexho, Inc. and Sodexho Operations, LLC (collectively, "Sodexho"). Friendly Fruit alleges breach of contract, violations of Massachusetts General Laws, Chapter 93A and violations of the Perishable Agricultural Commodities Act, 7 U.S.C. § 499b (2006) ("PACA") among other things. Sodexho counterclaims for breach of contract and declaratory judgment. Friendly Fruit has moved for summary judgment and Sodexho has moved for partial summary judgment.

## I. *Background*

### A. Factual Background

Friendly Fruit is a distributor of fresh produce and specialty foods, primarily in New England and New York. Sodexho manages food service operations and facilities. Friendly Fruit and Sodexho entered into a Regional Distribution Agreement which became effective on September 1, 2002 and expired August 31, 2005 ("the 2002 Contract"). Under the 2002 Contract, Friendly Fruit provided produce to Sodexho, Sodexho paid Friendly Fruit a fixed percentage over Friendly Fruit's cost and Friendly Fruit rebated to Sodexho 10.5% of Sodexho's payments within 15 days after the end of the month of purchase. The rebate payments are called "Allowances". There was also a 90–day survivability clause in the 2002 Contract that is a standard, non-negotiated provision in Sodexho agreements ("Survivability Clause"). The Survivability Clause stated that certain provisions of the 2002 Contract were to continue to be binding for 90 days after the contract expired. During the negotiation of the 2002 Contract, Sodexho and Friendly Fruit did not discuss the "survivability" of the payment of the Allowances.

When Friendly Fruit bid on a new contract with Sodexho before the expiration of the 2002 Contract, Sodexho informed Friendly Fruit that it was not the low bidder, and would not, therefore, be awarded the contract. As of August 31, 2005 Friendly Fruit and Sodexho had not entered into a new agreement. There is a dispute as to whether Friendly Fruit anticipated more orders from Sodexho after the 2002 Contract expired but after that expi-

ration, on August 31, 2005, Sodexho continued to place orders with and receive produce from Friendly Fruit. Friendly Fruit stopped paying the Allowances as of September 1, 2005. It reasoned that, because the 2002 Contract had expired, it was not obligated to pay the Allowances.

The parties dispute the date upon which Sodexho became aware that Friendly Fruit had stopped paying Allowances. Sodexho claims that, because of the manner in which its billing operates, Dexter Tompkins ("Tompkins"), the employee primarily responsible for the Friendly Fruit account, did not learn that Friendly Fruit had stopped paying Allowances until February, 2006. Friendly Fruit claims that Sodexho knew or should have known of the stoppage prior to that date. It is undisputed that Friendly Fruit did not explicitly tell Sodexho that it had stopped paying Allowances and Sodexho did not contact Friendly Fruit regarding the failure to pay Allowances until February, 2006, nearly six months after Friendly Fruit discontinued such payments.

When Sodexho questioned Friendly Fruit in February, 2006 about its failure to pay, Friendly Fruit explained that it would not pay the Allowances because the 2002 Contract had expired. At that point, unbeknownst to Friendly Fruit, Sodexho put a "hold" on its automatic payments for produce in order to satisfy the outstanding Allowances it believed were due.

During this time, Sodexho and Friendly Fruit negotiated the terms of a new agreement which took effect on April 16, 2006 ("the 2006 Contract"). Sodexho attempted to back date the contract to September 1, 2005, but Friendly Fruit demurred, noting that the invoices issued since the termination of the 2002 Contract were inconsistent with the contents of the proposed agreement. On April 26, 2006, Sodexho signed the 2006 Contract which provided for a narrower scope of business than the 2002 Contract.

Also on April 26, 2006, Sodexho ordered its accounting department to withhold $884,665.75 from the total amount due to Friendly Fruit for March, 2006 purchase orders ($1,266,562.19). The amount withheld equaled the amount of Allowances Sodexho calculated were due on sales after the expiration of the 2002 Contract and up to the commencement of the 2006 Contract. On May 4, 2006, Sodexho sent Friendly Fruit a check for the net amount due to Friendly Fruit after subtracting claimed Allowances ($387,689.43).

Sodexho had accrued enough accounts payable to cover the unpaid Allowances before it learned of the non-payment in February, 2006, and there is a dispute about why it waited until April, 2006 to exercise the setoff. Sodexho asserts that prior to April, it thought the parties could resolve the dispute amicably, but Friendly Fruit contends the delay was deliberate and perpetrated in bad faith. Friendly Fruit filed this lawsuit on May 12, 2006.

Documents dated June 2, 2006, were processed internally at Sodexho to reverse the setoff with respect to the amount attributable to Allowances on sales for the period November 30, 2005 through April 16, 2006, i.e. for the time elapsed after the 90-day "survivability" period. Sodexho claims that it authorized the withholding reversal in order to make funds available for settlement negotiations with Friendly Fruit. Although Sodexho claimed to be entitled to Allowances from November 30, 2005 through April 16, 2006 ("the Second Period") in its original counterclaim, it has amended that counterclaim to assert entitlement to Allowances only for the 90-day "survivability" period following the expiration of the 2002 Contract ("the First Period").

On April 9, 2007, Sodexho paid Friendly Fruit the amount Sodexho calculated was attributable to Allowances withheld for sales from the Second Period, plus 18% annual interest through April 10, 2007.

### B. Procedural History

Friendly Fruit filed its first complaint on May 12, 2006 and its amended complaint on June 6, 2006. Sodexho answered the amended complaint on July 11, 2006, and included a counterclaim. Friendly Fruit answered the counterclaim on July 19, 2006. Sodexho amended its answer and counterclaim on March 16, 2007, and Friendly Fruit responded to the amended counterclaim on March 26, 2007.

The parties filed cross-motions for summary judgment (and partial summary judgment) on September 24, 2007, both of which are opposed. Friendly Fruit contends that Sodexho failed to file a statement of facts in compliance with Local Rule 56.1. It asks that Sodexho's motion for summary judgment be denied on that ground alone or, alternatively, that Sodexho's "Statement of Material Facts as to which there is no Genuine Dispute" be struck to the extent it includes argument and legal conclusions.

## II. *Analysis*

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves,* 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Analysis

Friendly Fruit has moved for summary judgment on its breach of contract claim and its Chapter 93A claim. Sodexho has moved for summary judgment on its breach of contract counterclaim (which is limited to the First Period) and on Friendly Fruit's Chapter 93A claim. Sodexho also opposes Friendly Fruit's motion for summary judgment on the breach of contract claim for the Second Period.

#### 1. Breach of Contract Claim

■ Maryland law governs interpretation of the 2002 Contract pursuant to Section 20 of the contract. Under Maryland law, the court must interpret the contract,

including specifically whether an ambiguity exists, as a matter of law. *Diamond Point Plaza Ltd. v. Wells Fargo Bank*, 400 Md. 718, 751–52, 929 A.2d 932 (2007).

As a preliminary matter, Sodexho argues that Friendly Fruit cannot establish breach of contract for the Second Period because there are no damages. Sodexho paid Friendly Fruit the disputed amount for that period, plus interest, in April, 2007. In this litigation, Sodexho does not claim it is entitled to any Allowances for the Second Period, but it opposes Friendly Fruit's motion for summary judgment with respect to that portion of the complaint. Because the Chapter 93A claim arises, in part, from Sodexho's original withholding of Allowances for the Second Period, however, this Court will address the entire contract.

### a. The Survivability Clause

■ Sodexho and Friendly Fruit disagree about whether the Allowance obligation of Friendly Fruit survived the expiration of the 2002 Contract. Section 23, the Survivability Clause, of the 2002 Contract states, in relevant part:

> Section 5 and Exhibit A shall survive for a period of ninety (90) days following the earlier of the Expiration date or the termination date.

Section 5 of the 2002 Contract addresses the products to be delivered under the agreement. Exhibit A is entitled "Products & Allowances" and states:

> 1. *Products.* See Exhibits A–1 and A–2 attached hereto.
>
> 2. *Monthly Approved Distributor Allowance.* In consideration for Sodexho designating Distributor as an approved supplier, Distributor shall pay to Sodexho on a monthly basis an Approved Distributor Allowance equal to Ten and One–Half Percent (10.5%) of Total Sales for the month....The Distribution Al-

lowance shall be paid within fifteen (15) days of the end of the month.

Exhibits A–1 and A–2 list the products to be bought and sold.

The body of the contract also contains a provision relating to Allowances. Section 8.d states, in relevant part:

> All Allowances, Discounts, or Incentives (collectively "Allowances") shall be set forth on *Exhibit A* and shall be paid on all purchases by the Accounts that have been paid for by Sodexho or the Account.

Friendly Fruit.avers that because the Survivability Clause does not specifically refer to Section 8.d, but does reference Section 5 and Exhibit A together, it is not meant to apply to the Allowance obligation.

This argument is unpersuasive. On its face, the Survivability Clause plainly states that Exhibit A is to remain in effect. Exhibit A (albeit subsection 2. thereof) states that Friendly Fruit "shall pay" the Allowance. As Sodexho suggests, ignoring the words "shall pay" in the allowance provision of Exhibit A would violate the tenet that every word and phrase of a contract should, if possible, be given meaning and effect. *JMP Assocs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 345 Md. 630, 635–36, 693 A.2d 832 (1997) (citations omitted).

■ Friendly Fruit correctly points out, however, that to interpret the Survivability Clause as continuing the allowance obligation would create an inconsistency in the contract as a whole. It would result in the survival of the Allowance provision in one part of the contract (Exhibit A) but not in another part (Section 8.d). That is troublesome because contracts should be interpreted, if reasonably possible, so as not to create a conflict between two clauses. *Heist v. E. Sav. Bank, FSB*, 165 Md.App. 144, 151, 884 A.2d 1224 (2005). Moreover, under Sodexho's interpretation, the re-

mainder of the pricing scheme does not survive the termination of the contract, leaving an entirely incongruous business relationship. Because the Survivability Clause can be interpreted by a reasonably prudent person as providing for either the continuation or the termination of the allowance obligation, it is ambiguous.

A court may resolve an ambiguity in a contract as a matter of law if such interpretation is based on undisputed extrinsic evidence. *Truck Ins. Exch. v. Marks Rentals, Inc.*, 288 Md. 428, 433, 418 A.2d 1187 (1980). If that extrinsic evidence is disputed, however, interpretation of the contract is for the jury. *Id.* In this case, the parties have not introduced undisputed extrinsic evidence at the summary judgment stage.[1] The Court acknowledges that certain potential extrinsic evidence, such as evidence of industry standards, could aid a fact finder in resolving the ambiguity. If there is such extrinsic evidence, it will be for the fact finder to interpret.

### b. Practice and Performance of the Parties After the Termination of the Contract

Even if the Survivability Clause did not continue the allowance obligation of Friendly Fruit, practice and performance may have created an implied contract during both the First and Second Periods. To determine whether there is an implied contract, this Court will apply the law of Massachusetts where Friendly Fruit conducted its business with Sodexho.

Massachusetts recognizes implied contracts based on the conduct of the parties. *Bushkin Assocs. v. Raytheon Co.*,

815 F.2d 142, 151 (1st Cir.1987). Neither party in this case, however, cites a Massachusetts case that addresses how to determine whether an implied contract exists, particularly in the context of renewing an expired contract, and this Court has been unable to find one.

Sodexho relies on a Second Circuit case which holds that

> [w]hen an agreement expires by its terms, if, without more, the parties continue to perform as theretofore, an implication arises that they have mutually assented to a new contract containing the same provisions as the old.

*Martin v. Campanaro*, 156 F.2d 127, 129 (2d Cir.1946). Under *Martin* the existence of a new contract is determined by an objective test: whether a reasonable man would think the parties intended to make a new binding agreement as determined by their actions. *Id.*

The facts that would determine whether an implied contract existed are disputed and more than one inference may be drawn from the undisputed facts. Such a case is not appropriate for summary judgment. Consequently, this Court will deny the cross motions for summary judgment with respect to the alleged breach of contract for both the First and Second Periods following the expiration of the 2002 Contract.

### 2. Chapter 93A Claim

The Massachusetts Consumer Protection Act, Mass. Gen. Laws, ch. 93A ("Chapter 93A") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce". Friendly Fruit moves for summary judgment on its Chapter 93A claim alleging that Sodexho 1)

---

1. Friendly Fruit suggests that the fact that Sodexho drafted the contract operates as extrinsic evidence. Under Maryland law, however, a contract is construed against the drafter only if there is an ambiguity and no explanatory extrinsic evidence exists. *Cheney v. Bell Nat'l Life Ins. Co.*, 315 Md. 761, 766–67, 556 A.2d 1135 (1989).

deceived Friendly Fruit by ordering and accepting product from February, 2006 to April, 2006, while it had no intention of paying full price, 2) withheld money from Friendly Fruit on a sham and 3) violated PACA. Sodexho has filed a cross motion for summary judgment on the plaintiff's Chapter 93A claim, seeking to have it dismissed. A cause of action alleging violation of Chapter 93A may be an appropriate matter for summary judgment provided there is no genuine issue of material fact. *Chub v. Elec. Ins. Co.*, 17 Mass.App.Ct. 61, 61, 455 N.E.2d 646 (1983).

### a. Friendly Fruit's Motion for Summary Judgment

Friendly Fruit's Chapter 93A claim is based on its breach of contract claim. Sodexho cannot have deceptively withheld money (on a sham or otherwise) if it was entitled to that money under contract. Similarly, Friendly Fruit cannot establish a PACA violation resulting from Sodexho's failure to pay Friendly Fruit fully and promptly if Sodexho was entitled to a setoff under a contract. As explained above, whether an implied, renewed contract existed is for the fact finder to decide. Thus, Friendly Fruit is not entitled to summary judgment on its Chapter 93A claim and this Court will deny that motion.

### b. Sodexho's Motion for Summary Judgment

Sodexho can prevail on its motion to dismiss the Chapter 93A claim if it can show, as a matter of law, that there was a good faith dispute regarding payment of the Allowances and that any possible violation of PACA by Sodexho is not a Chapter 93A violation. Moreover, if Sodexho is correct that Friendly Fruit has suffered no monetary or property damage during the Second Period (due to Sodexho's April, 2007 payment) then Sodexho is not liable for a Chapter 93A violation during that period. *See Halper v. Demeter*, 34 Mass. App.Ct. 299, 303–04, 610 N.E.2d 332 (1993).

### i. Good Faith Dispute

■ If a party believes in good faith that it has a right to setoff amounts due under a contract, Chapter 93A liability will not lie. *See Arthur D. Little Int'l, Inc. v. Dooyang Corp.*, 147 F.3d 47, 55 (1st Cir. 1998); *Quaker State Oil Ref. Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1514 (1st Cir.1989). It is unclear from the undisputed facts in this case whether Sodexho withheld the Allowances in good faith. Conflicting reasonable inferences can be drawn from the disputed "facts" that the parties have presented. Consequently, there is a genuine issue of material fact as to whether Sodexho did or did not willfully deceive Friendly Fruit or withhold money on a sham basis. The dispute will be resolved by the fact finder.

### ii. Alleged PACA Violation

■ Not every statutory violation constitutes a violation of Chapter 93A:

> The circumstances of each case must be analyzed, and unfairness is to be measured not simply by determining whether particular conduct is lawful (or unlawful, we now add) apart from G.L. c. 93A but also by analyzing the effect of the conduct on the public (or the consumer).

*Mechs. Nat'l Bank of Worcester v. Killeen*, 377 Mass. 100, 109, 384 N.E.2d 1231 (1979) (quoting *Schubach v. Household Fin. Corp.*, 375 Mass. 133, 137, 376 N.E.2d 140 (1978)).[2] Thus, although violation of

**2.** The cases cited by both parties address violations of state statutes rather than federal statutes. Title 940, section 3.16(3) of the

Code of Massachusetts Regulations states that an act or practice violates Chapter 93A if "[i]t fails to comply with existing statutes, rules,

PACA is not a *per se* Chapter 93A violation, if Friendly Fruit can prove harm to consumers or to the public, it is possible that a violation of PACA could lead to Chapter 93A liability. Sodexho's motion for summary judgment with respect to the Chapter 93A claim based on PACA will also be denied.

### iii. Actual Damages for the Second Period

■ Section 11 of Chapter 93A requires the plaintiff to demonstrate actual damages in the form of "loss of money or property, real or personal" in order to prove liability. MASS. GEN. LAWS ch. 93A, § 11. The same section permits the court to double or triple the "amount of the judgment on all claims arising out of the same and underlying transaction or occurrence." *Id.* Sodexho contends that the money it paid Friendly Fruit in April, 2007, negates the occurrence of any actual damages and that there is, therefore, no amount to award or multiply under Chapter 93A.

Sodexho points to a line of cases that makes clear that neither a settlement nor an arbitration award constitutes a judgment for purposes of multiplying damages under Chapter 93A. *Murphy v. Nat'l Union Fire Ins. Co.*, 438 Mass. 529, 531–32, 781 N.E.2d 1232 (2003) (holding that arbitration award does not qualify as judgment); *Clegg v. Butler*, 424 Mass. 413, 424–25, 676 N.E.2d 1134 (1997)(holding that settlement cannot be reduced to a judgment for purposes of a Chapter 93A claim).

Other case law, however, indicates that a payment similar to Sodexho's is to be con-

sidered only at the conclusion of a damages calculation and after application of an appropriate multiple. *See, e.g., Ameripride Linen & Apparel Servs., Inc. v. Eat Well, Inc.*, 65 Mass.App.Ct. 63, 836 N.E.2d 1116 (2005). Friendly Fruit and Sodexho explicitly agreed that the April, 2007 payment was not a settlement of any kind. Consequently, if any liability is found under Chapter 93A, the April, 2007 payment functions only as an offset to any damages that may be found by the fact finder. Sodexho's motion for summary judgment on the Chapter 93A claim will be denied.

### ORDER

In accordance with the foregoing, the plaintiff's motion for summary judgment (Docket No. 28) and the defendant's motion for partial summary judgment (Docket No. 27) are **DENIED.**

**So ordered.**

regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protec-

tion." There is no corresponding regulation under federal law and thus it is doubtful that a Chapter 93A violation can result solely from the violation of federal law.