NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11477


   AUTO FLAT CAR CRUSHERS, INC. vs.  HANOVER INSURANCE COMPANY.



        Norfolk.     May 5, 2014. - October 15, 2014.

 Present:  Ireland, C.J., Spina, Botsford, Gants, Duffly, & Lenk,
                            JJ.[1]



Insurance, Insurer's obligation to defend, Coverage.  Consumer
     Protection Act, Insurance, Availability of remedy, Damages,
     Unfair or deceptive act.  Contract, Insurance, Performance
     and breach, Damages, Indemnity.  Damages, Consumer
     protection case, Breach of contract.  Indemnity.
     Declaratory Relief.  Environment, Environmental cleanup
     costs.


     Civil action commenced in the Superior Court Department on
May 20, 2009.

     A motion for partial summary judgment was heard by E. Susan
Garsh, J.; motions for partial summary judgment were heard by
Elizabeth B. Donovan, J.; a motion for summary judgment on the
remaining issue was heard by Raymond P. Veary, Jr., J.; and the
case was reported to the Appeals Court by Kenneth J. Fishman, J.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Donald V. Jernberg (John J. McMaster with him) for the
plaintiff.

———————————————————

     [1]Chief Justice Ireland participated in the deliberation on
this case prior to his retirement.

Aaron R. White for the defendant.
The following submitted briefs for amici curiae:
John P. Ryan & Harry A. Pierce for Massachusetts Insurance Federation, Inc.
Jonathan M. Feigenbaum for United Policyholders.
J. Michael Conley, Hans R. Hailey, Thomas R. Murphy, & Danielle M. Spang for Massachusetts Academy of Trial Attorneys.

LENK, J.  The plaintiff's insurer refused to defend or to indemnify the plaintiff in connection with an environmental dispute involving the Department of Environmental Protection (DEP).  Several years later, the plaintiff, having by then funded both its own defense and the environmental remediation ordered, brought suit against the insurer, alleging breach of contract and seeking declaratory relief; on a motion for partial summary judgment, the plaintiff obtained declaratory relief establishing the insurer's duty to defend.  The plaintiff then amended its complaint to assert a claim under G. L. c. 93A, § 11 (§ 11), arising out of the insurer's failure to defend; the insurer did not avail itself of the statutory mechanism permitting a defendant to limit its liability to single damages by tendering with its answer a written offer of settlement.  See G. L. c. 93A, § 11, fifth par.  Thereafter, and while reserving its rights as to its pending claims, the plaintiff accepted reimbursement from the insurer, with interest, for its expenses

in litigating and resolving the DEP matter.  It is the consequence of having done so that gives rise to this appeal.[2]

The essential question before us is whether the plaintiff, having been thus compensated for its losses, may nonetheless continue to press its pending claims, particularly under G. L. c. 93A.  The insurer maintains that, because the plaintiff has no uncompensated losses, its contract claims must fail as a matter of law, as must its G. L. c. 93A claim, since, as to the latter, the plaintiff no longer can establish the requisite "loss of money or property" constituting actual damages for purposes of § 11.  The insurer also asserts that the G. L. c. 93A claim must fail for the separate reason that, absent a judgment on the plaintiff's breach of contract claims establishing an amount of actual damages, and where the plaintiff has been made whole, there is no predicate for calculating multiple damages under G. L. c. 93A.

We conclude that, because the statute does not require a plaintiff to demonstrate uncompensated loss or to obtain a judgment on an underlying claim in order to proceed, neither the plaintiff's acceptance of full reimbursement of its expenses nor

---

[2] We acknowledge the amicus briefs submitted by the Massachusetts Academy of Trial Attorneys and United Policyholders on behalf of Auto Flat Car Crushers, Inc.  We also acknowledge the amicus brief submitted by the Massachusetts Insurance Federation, Inc., on behalf of Hanover Insurance Company.

the absence of a judgment establishing contract damages precludes the plaintiff from pursuing a claim under G. L. c. 93A.  In the circumstances here, however, the plaintiff may not press its remaining contract and declaratory judgment claims.

1.  Background and prior proceedings.  a.  Factual background.  The plaintiff, Auto Flat Car Crushers, Inc. (Auto Flat), operates a vehicle-crushing service in Millis.  At all relevant times, it has been insured under a garage insurance policy[3] issued by the defendant, Hanover Insurance Company (Hanover).  In February, 2004, Auto Flat was hired to remove 600 vehicles from an automobile salvage yard in Spencer.  The removal process entailed detaching the vehicles' fuel tanks and emptying their contents into large drums before crushing the vehicles.

In March of that year, Auto Flat received a notice of responsibility from the DEP, pursuant to G. L. c. 21E, informing it that a release of oil or other hazardous material had occurred at the salvage yard in Spencer.  DEP identified Auto Flat as "a party with potential liability" and ordered it to take various responsive actions.

---

[3] A garage insurance policy is a commercial policy designed to address the needs of automobile dealers and others in the business of servicing automobiles.

Auto Flat advised Hanover of the notice and sought defense and indemnification in the matter. By letter dated June 4, 2004, Hanover denied coverage, claiming that the loss "did not arise out of the ownership, maintenance or use of the garage location," nor was it "a result of operations incidental to a garage business." Hanover also cited the policy's pollution exclusion as barring coverage for Auto Flat's losses. After Auto Flat renewed its request for coverage, Hanover issued another denial letter, dated November 9, 2004, referring to exclusions not mentioned in its first letter.

In August, 2008, having incurred considerable legal expenses and remediation costs in connection with the then-concluded DEP matter, Auto Flat again contacted Hanover, asserting its "conclusion that Hanover improperly denied both defense and indemnity coverage." After Hanover reaffirmed its denial of coverage, citing the reasons given in its first letter of denial, Auto Flat commenced its action in the Superior Court.

Auto Flat's four-count complaint (1) sought a declaration that Hanover had a duty to defend Auto Flat against DEP allegations that it had released hazardous materials into the environment; (2) alleged breach of contract by virtue of Hanover's failure so to defend; (3) sought a declaration that Hanover had a duty to indemnify Auto Flat for the costs of complying with DEP's cleanup directives; and (4) alleged breach

of contract by virtue of Hanover's failure so to indemnify. Hanover filed counterclaims seeking a declaratory judgment on the claims concerning the duty to defend and the duty to indemnify. Three entries of partial summary judgment followed, which we discuss in turn.

b. <u>Partial summary judgment on duty to defend (count 1) and subsequent correspondence between parties</u>. In December, 2009, a Superior Court judge allowed Auto Flat's motion for partial summary judgment on count 1, the duty to defend, ruling that the policy provided Auto Flat with coverage for a defense against the DEP allegations. In March, 2010, Auto Flat amended its complaint to add a fifth count alleging that Hanover's denial of such defense constituted a violation of G. L. c. 93A.[4]

On May 6, 2010, at Hanover's request, Auto Flat sent Hanover an accounting of its expenses to that point. The accounting included legal fees incurred in connection with the DEP matter and in establishing Hanover's duty to defend, and cleanup costs incurred at the behest of DEP. A few days later, and approximately six years after Auto Flat first made a claim for insurance coverage, Hanover agreed to reimburse Auto Flat for all of its expenses, less certain downward adjustments where it stated that Auto Flat's figures were legally unwarranted or

---

[4] Because both Auto Flat and Hanover are engaged in the conduct of trade or commerce, G. L. c. 93A, § 11, rather than G. L. c. 93A, § 9, applies.

insufficiently documented.  Hanover enclosed a check for $449,924.47 with its letter; the check included both $314,170.70 for payment of expenses incurred[5] and $135,753.77 in interest. Hanover stated that it would "consider making additional reimbursement upon the receipt of additional documentation."

Auto Flat did not agree that the amount paid represented the full amount owed, but accepted the payment "without prejudice to either the insured's right [to] pursue additional amounts owed for defense and indemnity or to pursue damages under [G. L. c.] 93A."  Auto Flat thereafter submitted additional invoices, and Hanover responded with two more checks. In total, Hanover paid Auto Flat $539,757.48.

By letter dated October 20, 2010, Auto Flat acknowledged Hanover's payment of expenses incurred in the DEP matter. Noting, however, the "remaining issues" of postjudgment legal fees[6] incurred after the entry of partial summary judgment establishing the duty to defend, and the pending G. L. c. 93A claim, Auto Flat indicated its "willing[ness] at [that] time to make a final settlement of the remaining claims," and made a demand for settlement in the amount of $246,007.71.  Asserting that it was undisputed that "Hanover [had] fully reimbursed Auto

---

[5] Auto Flat's asserted expenses, prior to any calculation of interest, amounted to $405,290.07.

[6] Auto Flat later filed a motion to compel the payment of such fees; the motion was denied.

Flat for its defense and indemnification of the claim with interest," Hanover "denie[d] any allegation that it violated [G. L.] c. 93A," and declined to offer any additional payment.

c. <u>Partial summary judgment on counts 2 through 5</u>. In April, 2011, Hanover moved for partial summary judgment on counts 2 through 4 of Auto Flat's complaint, which sought contract damages for breach of the already-adjudicated duty to defend, a declaration that Hanover had a duty to indemnify Auto Flat, and contract damages for breach of the duty to indemnify.[7] Hanover argued that, even if Auto Flat could establish a breach of contract as to either duty, Auto Flat already had been made whole by Hanover's reimbursement of all expenses incurred in the DEP matter, plus twelve per cent interest per annum. Accordingly, Hanover maintained, Auto Flat could not demonstrate that it continued to suffer damages, and its breach of contract claims therefore failed as a matter of law. Hanover asserted also that Auto Flat was not entitled to a declaration regarding Hanover's duty to indemnify because "there [was] simply nothing to indemnify." A different judge allowed Hanover's motion, incorporating by reference the rationale offered in Hanover's supporting memorandum.

---

[7] Auto Flat also filed a cross motion for summary judgment on counts 2 (breach of contract for failure to defend) and 4 (breach of contract for failure to indemnify).

Hanover thereafter sought summary judgment on count 5 of Auto Flat's complaint, which alleged a violation of G. L. c. 93A by virtue of Hanover's failure to defend Auto Flat in the DEP litigation. Hanover made much the same argument as it had in its memorandum in support of its motion for summary judgment on the breach of contract and indemnification claims, namely that Hanover's reimbursement of Auto Flat's expenses precluded a finding that Auto Flat had suffered a loss of money or property, as required to establish a violation of G. L. c. 93A, § 11.[8]

A third judge denied Hanover's motion, concluding that Auto Flat had suffered a monetary loss "as a matter of historical fact," notwithstanding Hanover's payments, which, in any event, were made after the commencement of the action. Citing Ameripride Linen & Apparel Servs., Inc. v. Eat Well, Inc., 65 Mass. App. Ct. 63, 68-70 (2005), the judge reasoned that, "[i]n actions brought under [G. L. c.] 93A, amounts earlier paid by one party to another are appropriately considered as a basis for setoff against a possible award of multiple damages, and not as a bar to the underlying action."

---

[8] Hanover did not argue that its refusal to defend Auto Flat in the litigation with the Department of Environmental Protection (DEP) did not constitute an unfair or deceptive act or practice. Rather, it maintained that, "even if [Auto Flat could] establish that [Hanover] engaged in unfair or deceptive conduct, [Auto Flat] has already been made whole for all alleged damages," and accordingly could not make out a showing of damages, as required by G. L. c. 93A, § 11.

The parties then filed a joint motion seeking to report the decisions on counts 2 through 4 and count 5, to the Appeals Court for interlocutory review, pursuant to Mass. R. Civ. P. 64, as amended, 423 Mass. 1410 (1996). The motion was allowed, and we transferred the case to this court on our own motion.

2. Discussion. The central dispute on appeal concerns Auto Flat's ability to pursue a claim under G. L. c. 93A after accepting Hanover's payments in reimbursement for expenses incurred in connection with the DEP matter. Although the parties now agree that Auto Flat's damages stemming from Hanover's breach of the duty to defend have been reimbursed fully, with interest,[9] the parties continue to disagree over whether such compensatory payments eliminated Auto Flat's actual damages as a matter of law, such that its underlying breach of contract claim, or its G. L. c. 93A claim, was precluded as a result.

Hanover argues that, in addition to eliminating Auto Flat's contract damages, its postcomplaint reimbursement of Auto Flat's

[9] As discussed infra, it is not clear whether the parties agreed, at the time of entry of the order granting partial summary judgment on counts 2 through 4, that Hanover had reimbursed Auto Flat fully for losses incurred as a result of the breach of the duty to defend. Nonetheless, by the time of the parties' joint motion to report the decisions on counts 2 through 4 and count 5 for interlocutory review, they apparently agreed that all of Auto Flat's damages had been paid, with appropriate interest. The record does not indicate, however, that the parties ever entered into a settlement agreement covering either the contract claims or the G. L. c. 93A claim.

expenses also eliminated all of Auto Flat's actual damages, establishment of which would be necessary for any recovery under G. L. c. 93A, § 11.  Accordingly, Hanover contends, the denial of its motion for summary judgment on the G. L. c. 93A claim (count 5) was error, but the allowance of summary judgment in its favor on the breach of contract claims (counts 2 and 4), and on the issue of the duty to indemnify (count 3), was proper.

Auto Flat, on the other hand, contends that it has viable contract and G. L. c. 93A claims against Hanover.  The G. L. c. 93A claim arises from Hanover's asserted unfair or deceptive act or practice of refusing, in the circumstances, to provide its insured a defense in the DEP litigation.  Auto Flat's asserted actual damages for purposes of § 11 are those expenses it incurred as a matter of historical fact and for which it belatedly received full compensation, regardless of whether those expenses were established in a judgment on its claims alleging Hanover's contractual breaches of the duties to defend and indemnify.

Auto Flat argues that, if a judgment is needed in order to establish the amount of actual damages, Hanover's unilateral and belated tender, absent a settlement between the parties, should not bar entry of a judgment in its favor on its breach of contract claims.  In particular, Auto Flat maintains an entitlement to a judgment on count 2, alleging a breach of the

contractual duty to defend, for which Hanover's liability was established by the initial declaratory judgment; such judgment, it contends, would serve as a predicate for any award of multiple damages under G. L. c. 93A. Auto Flat argues that the payments it received from Hanover should be viewed as an offset against any G. L. c. 93A damages that might be awarded, after multiplication as appropriate, rather than as a bar to recovery in the first instance under G. L. c. 93A. Auto Flat accordingly asks that we affirm the ruling on count 5, the G. L. c. 93A claim, and reverse the ruling on counts 2 through 4.

We first consider whether the judge properly denied Hanover's motion for partial summary judgment on count 5 before addressing whether the allowance of Hanover's partial motion for summary judgment on counts 2 through 4 was warranted.

a. Partial summary judgment on G. L. c. 93A claim (count 5). Whether Auto Flat's acceptance of Hanover's payments eliminated its actual damages, such that it could not proceed on its G. L. c. 93A claim, presents a question of law appropriate for resolution in a motion for summary judgment. Our review is de novo. See Premier Capital, LLC v. KMZ, Inc., 464 Mass. 467, 469 (2013), and cases cited. In reviewing a denial of a motion for summary judgment in a case in which the opposing party, Auto Flat, will have the burden of proof at trial, we consider whether the moving party, Hanover, has "demonstrate[d], by

reference to material described in Mass. R. Civ. P. 56 (c), [as amended, 436 Mass. 1404 (2002),] unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." HipSaver, Inc. v. Kiel, 464 Mass. 517, 522 (2013), quoting Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

To be successful, a plaintiff bringing a claim under § 11 must establish (1) that the defendant engaged in an unfair method of competition or committed an unfair or deceptive act or practice, as defined by G. L. c. 93A, § 2, or the regulations promulgated thereunder; (2) a loss of money or property suffered as a result;[10] and (3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act, or practice. See G. L. c. 93A, § 11; R.W. Granger & Sons v. J & S Insulation, Inc., 435 Mass. 66, 80-81 (2001); Jet Line Servs., Inc. v. American Employers Ins. Co., 404 Mass. 706, 718 (1989). Cf. Herman v. Admit One Ticket Agency LLC, 454 Mass. 611, 615-616 (2009), citing Hershenow v. Enterprise Rent-A-Car Co. of Boston, 445 Mass. 790, 797 (2006).

---

[10] The requirement that a plaintiff have suffered a loss of money or property is unique to G. L. c. 93A, § 11, governing suits between businesses. Under G. L. c. 93A, § 9 (1), by contrast, which applies to consumer actions, a plaintiff need only show that he or she "has been injured."

Hanover does not dispute that Auto Flat has at least a reasonable expectation of proving both the first and third elements. See note 8, supra. As the third judge observed, the claim that Hanover engaged in unfair or deceptive acts or practices by refusing to provide a defense in the DEP litigation "must at least be viewed as reasonably credible, given Auto Flat's successful motion for partial summary judgment [on count 1 of its complaint seeking a declaration of Hanover's duty to defend]."[11] It is also undisputed, and indeed the parties acknowledge, that Hanover's refusal to defend Auto Flat caused the latter to incur substantial out-of-pocket expenses. At issue, then, is the second element: whether, after accepting payments from Hanover, which both parties now agree fully reimbursed Auto Flat's underlying losses incurred as a result of the breach of the duty to defend, Auto Flat still has a reasonable expectation of proving that it has suffered actual damages.

As to this question, the parties dispute two main points. They disagree, most fundamentally, over whether the damages element of § 11 requires a showing of uncompensated loss. They

---

[11] We do not address whether Hanover's failure to defend Auto Flat in the DEP litigation in fact constituted an unfair or deceptive act or practice in violation of G. L. c. 93A, a point that Hanover did not raise below and does not press on appeal. Discovery that might assist in establishing the merits of Auto Flat's G. L. c. 93A claim appears to have been ongoing at the time of the summary judgment decisions.

also differ over whether a judgment establishing the amount of damages is a prerequisite to recovery under § 11, and the amount that can be recovered in the absence of such a judgment. We consider each point in turn.

i. Whether G. L. c. 93A requires a showing of uncompensated loss. Hanover argues that its payments to Auto Flat, made after Auto Flat had obtained a declaratory judgment establishing Hanover's liability and had asserted a G. L. c. 93A claim against Hanover arising from the insurer's failure to defend, negated Auto Flat's actual damages and therefore should bar a claim under the statute. The cases that Hanover cites in support of this argument, however, hold only that concrete monetary or property loss is necessary to support a § 11 claim. See Transamerica Ins. Group v. Turner Constr. Co., 33 Mass. App. Ct. 446, 452 (1992) (affirming dismissal of G. L. c. 93A claim against insurer where insurer paid all defense and settlement costs upfront, such that insured at no point suffered any loss of money). Cf. Baldassari v. Public Fin. Trust, 369 Mass. 33, 45 (1975) ("severe emotional distress" does not constitute "loss of money or property"). As we explain below, the plain language of § 11 and cases interpreting it, as well as the policy underlying G. L. c. 93A, make clear that a plaintiff who can establish that it has sustained such concrete monetary or property loss will have satisfied the actual damages element of

§ 11, without also having to prove that the loss remains uncompensated.

General Laws c. 93A "is a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights."  Slaney v. Westwood Auto, Inc., 366 Mass. 688, 693 (1975).  Recovery under the statute is not "limited by traditional tort and contract law requirements."  Id., quoting Commonwealth v. DeCotis, 366 Mass. 234, 244 n.8 (1974).  Although acceptance of a defendant's tender of payment may affect the continued viability of a plaintiff's contract claims, see Barron Chiropractic & Rehabilitation, P.C. v. Norfolk & Dedham Group, ante    , (2014), such acceptance does not vitiate a claim under G. L. c. 93A as a matter of course, unless the latter claim has been expressly settled.  See Fascione v. CNA Ins. Cos., 435 Mass. 88, 95-96 (2001) (insured's acceptance of insurer's late tender of payment extinguishes remedy under G. L. c. 90, § 34M, but recourse to G. L. c. 93A is preserved).  Even if the amount tendered represents the full amount recoverable as actual damages under G. L. c. 93A, as Auto Flat concedes is the case here, that alone does not preclude a claim under the statute.

Section 11, the particular provision governing actions between businesses, serves "the important public policy of encouraging the fair and efficient resolution of business

disputes"; it is intended to deter misconduct while providing a remedy for those who have suffered a specific harm as a result of a defendant's prohibited conduct. R.W. Granger & Sons v. J & S Insulation, Inc., supra at 83-84, citing International Fid. Ins. Co. v. Wilson, 387 Mass. 841, 857 (1983). Cf. Commonwealth v. Fall River Motor Sales, Inc., 409 Mass. 302, 316 (1991). Section 11 bestows a right of action on "[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal," as a result of the unfair or deceptive act or practice, or unfair method of competition, of another person who engaged in trade or commerce. G. L. c. 93A, § 11, first par. Such monetary or property loss constitutes the "actual damages" to which a prevailing plaintiff is entitled; a plaintiff may recover up to three times that amount upon a finding of a wilful or knowing violation of the statute. G. L. c. 93A, § 11, fourth par. "Said damages may include . . . attorneys' fees and costs," G. L. c. 93A, § 11, fourth par., and comprise "all foreseeable and consequential damages arising out of conduct which violates the statute." Brown v. LeClair, 20 Mass. App. Ct. 976, 979 (1985), citing DiMarzo v. American Mut. Ins. Co., 389 Mass. 85, 101 (1983).

Thus, under the plain language of § 11, "[i]f any person invades a [plaintiff's] legally protected interests, and if that

invasion causes the [plaintiff] a loss [of money or property] . . . the [plaintiff] is entitled to redress under our consumer protection statute." Hershenow v. Enterprise Rent-A-Car Co. of Boston, 445 Mass. 790, 802 (2006). Where a plaintiff can demonstrate that it has suffered actual damages, i.e., a concrete loss of money or property, § 11 does not impose a further requirement that the plaintiff establish outstanding uncompensated loss. Cf. United States v. Bornstein, 423 U.S. 303, 314 & n.10 (1976) (because language of False Claims Act then in effect "sp[oke] of doubling 'damages' and not doubling 'net damages' or 'uncompensated damages,'" Federal government's recovery of actual damages did not preclude action under that statute for multiple damages).

The injury requirement of G. L. c. 93A is designed "to guard against vicarious suits by self-constituted attorneys general who see a wrong but have not actually been harmed by the wrong." M.C. Gilleran, The Law of Chapter 93A § 4.18 (2d ed. 2007), and cases cited. Thus, plaintiffs proceeding under either § 9 or § 11 of G. L. c. 93A are obligated to allege and ultimately to prove a "distinct injury," Tyler v. Michaels Stores, Inc., 464 Mass. 492, 503 (2013); under § 11, first par., such injury encompasses "any loss of money or property, real or

personal."[12]  See <u>Baldassari</u> v. <u>Public Fin. Trust</u>, 369 Mass. 33, 45 (1975) ("'money' means money, not time, and . . . 'property' means the kind of property that is purchased or leased, not such intangibles as a right to a sense of security, to peace of mind, or to personal liberty").  Where a plaintiff has sustained the requisite "distinct injury," <u>Tyler</u> v. <u>Michaels Stores, Inc.</u>, <u>supra</u>, we have allowed recoveries under G. L. c. 93A without requiring additional elements of proof as to damages.  See <u>R.W. Granger & Sons</u> v. <u>J & S Insulation, Inc.</u>, <u>supra</u> at 83-84 (affirming award of double damages as serving important public policy, even where plaintiff was compensated for underlying losses, including interest, prior to entry of judgment on § 11 claim).  Cf. <u>Chery</u> v. <u>Metropolitan Prop. & Cas. Ins. Co.</u>, 79 Mass. App. Ct. 697, 699 (2011) (notwithstanding insurer's payment of benefits after insured's filing of claim alleging violation of G. L. c. 90, § 34M, insured showed, "for purposes

_____

[12] A plaintiff proceeding under G. L. c. 93A, § 9, need not demonstrate that he or she has suffered a loss of money or property.  See note 10, <u>supra</u>.  Rather, the damages element of G. L. c. 93A, § 9, requires only that a plaintiff establish an invasion of a legally protected interest, in the form of "a distinct injury or harm that arises from the claimed unfair or deceptive act itself."  <u>Tyler</u> v. <u>Michaels Stores, Inc.</u>, 464 Mass. 492, 503 (2013).  See <u>Hershenow</u> v. <u>Enterprise Rent-A-Car Co. of Boston, Inc.</u>, 445 Mass. 790, 799 (2006), quoting <u>Leardi</u> v. <u>Brown</u>, 394 Mass. 151, 159 (1985).  In the absence of actual damages, a plaintiff who prevails on a claim under G. L. c. 93A, § 9, will be awarded statutory damages of twenty-five dollars, subject to multiplication where appropriate.  See G. L. c. 93A, § 9 (3).

of surviving summary judgment [on G. L. c. 93A, § 9, claim], an ascertainable loss caused by [insurer's] dilatory conduct").

To the extent that a plaintiff already has received compensation for its underlying loss prior to the resolution of its G. L. c. 93A claim, such compensation has been treated as an offset against any damages ultimately awarded, rather than as a bar to recovery.[13]  See Ameripride Linen & Apparel Servs., Inc. v. Eat Well, Inc., 65 Mass. App. Ct. 63, 68-71 (2005); Friendly Fruit, Inc. v. Sodexho, Inc., 529 F. Supp. 2d 158, 166 (D. Mass. 2007).  See also Wolfberg v. Hunter, 385 Mass. 390, 399-400 (1982).  Treating such compensation as an offset against damages recovered, rather than as a bar to recovery altogether, comports

---

[13] Courts in other jurisdictions also have addressed whether a plaintiff's prior recovery of compensatory damages prevents him or her from stating a claim giving rise to punitive damages. While not involving statutes that provide for multiplication of actual damages as the measure of punitive damages, as G. L. c. 93A does, these cases concern common-law causes of action requiring showings of injury comparable to actual damages. These courts have held in pertinent regard that, where a plaintiff has established a concrete loss, he or she may proceed with a claim for punitive damages even where such loss has been fully compensated.  See, e.g., Fullington v. Equilon Enters., LLC, 210 Cal. App. 4th 667, 689-690 (2012) (plaintiff satisfied "actual damages" element of fraud cause of action notwithstanding already having been compensated; "the question relevant to determining whether a plaintiff may recover punitive damages is whether he or she suffered a tort for which the law permits the recovery of damages -- not whether those damages have [or have not] already been paid"); Turner v. Firstar Bank, N.A., 363 Ill. App. 3d 1150, 1160 (2006) (in suit against lender for wrongful repossession of vehicle, payment of compensatory damages prior to trial did not negate fact of legitimate injury, which supported claim for punitive damages).

with the policy rationale of G. L. c. 93A, and the Legislature's intent in enacting it. General Laws c. 93A is a "broad remedial" statute, Holland v. Jachmann, 85 Mass. App. Ct. 292, 299 (2014); "the Legislature's manifest purpose" in enacting it was to deter misconduct, Commonwealth v. Fall River Motor Sales, Inc., supra at 316, and to "encourage vindicative lawsuits." International Fid. Ins. Co. v. Wilson, supra at 857. These objectives would not be served by precluding claims on the basis of a lack of uncompensated loss; to the contrary, barring claims under such circumstances effectively "would undercut the deterrent purposes of [G. L.] c. 93A." Holland v. Jachmann, supra at 298.

Equating the payments to Auto Flat after the duty to defend was established with a settlement under § 11, Hanover argues that permitting Auto Flat's G. L. c. 93A claim to proceed in these circumstances would contravene the legislative purpose of the statute to promote settlement. The Legislature, however, has set forth a method by which defendants may settle § 11 claims. In an effort to prevent needless litigation, § 11 permits a defendant to tender with its answer a written offer of settlement, and thereby limit its liability to single damages. See G. L. c. 93A, § 11, fifth par. Hanover failed to comply with these requirements; it did not include such an offer with its answer, or at any other time. A defendant who fails to make

a reasonable settlement offer concurrently with its answer, as the statute provides, risks exposure to an award of multiple damages, which is "'the appropriate punishment' for forcing plaintiffs to litigate clearly valid claims." International Fid. Ins. Co. v. Wilson, supra at 857, quoting Heller v. Silverbranch Constr. Corp., 376 Mass. 621, 628 (1978).

Under Hanover's interpretation, § 11 would lose its force; insurers would be free to engage in dilatory conduct, arguably in violation of G. L. c. 93A, with the knowledge that, so long as they ultimately reimbursed claimants for their resulting expenses, statutory liability could be avoided. Even insurers acting in bad faith would be able to shield themselves from exposure to multiple damages, including attorney's fees, and to preempt an otherwise viable § 11 claim by reimbursing claimants prior to entry of a judgment. Insurers would be able to do so even where, as here, they initially had declined to tender a written offer of settlement with their answers, as provided by the statute.[14] Such an interpretation would significantly weaken

---

[14] We are unpersuaded by Hanover's argument that the only way for a plaintiff to preserve a claim under G. L. c. 93A in such circumstances is to reject the money offered by the insurer in reimbursement of its contract claims. Claims for breach of contract and for violations of G. L. c. 93A are distinct avenues for relief. See Linthicum v. Archambault, 379 Mass. 381, 383 (1979), citing York v. Sullivan, 369 Mass. 157, 164 (1975). Where a plaintiff is entitled to contract damages, as Auto Flat was after Hanover's duty to defend was established, he or she is not required to reject payment of those damages in order to

the existing statutory scheme, "designed to make it 'unprofitable'" for insurers to engage in unfair or deceptive conduct in the first instance, and would undermine the "prime goal" of § 11 to promote reasonable settlement offers. See International Fid. Ins. Co. v. Wilson, supra at 857. We therefore reject Hanover's argument as "clearly inconsistent with the scheme of [G. L. c. 93A.]" Commonwealth v. Fall River Motor Sales, Inc., supra at 316.

Thus, insofar as Auto Flat can establish a loss of money or property as a result of Hanover's breach of the duty to defend, and to the extent that failure to defend in the circumstances constitutes a violation of G. L. c. 93A, Auto Flat may maintain its claim under § 11, notwithstanding its acceptance of Hanover's compensatory payments.

ii. Whether G. L. c. 93A requires prior judgment establishing amount of damages as prerequisite to recovery. The parties also dispute whether the absence of a judgment in Auto Flat's favor, establishing the amount of damages incurred, precludes or otherwise limits recovery under G. L. c. 93A. Hanover argues that "[r]ecovery of damages under [G. L. c.] 93A

_____

preserve a claim under G. L. c. 93A. See Fascione v. CNA Ins. Cos., 435 Mass. 88, 95-96 (2001). Cf. Wolfberg v. Hunter, 385 Mass. 390, 398-399 (1982) (tenants who have right to withhold rent due to landlord's breach of warranty of habitability need not forgo that right in order to establish actual damages and thereby maintain G. L. c. 93A claim).

is triggered by a judgment." Where there has been no judgment awarding a plaintiff damages, Hanover contends, the plaintiff may recover only loss of use damages (here, interest), which, in any event, also have been reimbursed in this case. Hanover, however, misapprehends the significance of the second sentence of G. L. c. 93A, § 11, fifth par., inserted by a 1989 legislative amendment. See St. 1989, c. 580, § 2. That sentence does not make a prior judgment a prerequisite to recovery; rather, it provides only that, in certain circumstances, a judgment may constitute an appropriate basis for multiplication, as a penalty for a defendant's failure "to settle a claim reasonably, [thus] obliging the plaintiff to litigate unnecessarily." Kapp v. Arbella Mut. Ins. Co., 426 Mass. 683, 686 (1998), citing Clegg v. Butler, 424 Mass. 413, 425 (1997).

Before 1989, several appellate decisions had held that the measure of damages for an insurer's failure to effectuate a prompt settlement of a claim under a policy was "the damages directly caused by the insurer's conduct -- typically, loss of the use of such funds from the time when the claim should have been paid to the time that a settlement or judgment was paid -- and not the total amount owed to the claimant under the insurance policy." Rhodes v. AIG Domestic Claims, Inc., 461 Mass. 486, 497-498 (2012), citing Bertassi v. Allstate Ins. Co.,

402 Mass. 366 (1988) (Bertassi); Wallace v. American Mfrs. Mut. Ins. Co., 22 Mass. App. Ct. 938 (1986) (Wallace); Trempe v. Aetna Cas. & Sur. Co., 20 Mass. App. Ct. 448 (1985) (Trempe). However, the Legislature amended G. L. c. 93A in 1989, to revise the calculation of damages in certain circumstances. See St. 1989, c. 580, § 2 (1989 amendment). As modified by the 1989 amendment, noted with emphasis below, § 11, fifth par., now provides,

> "If the court finds for the petitioner, recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the use or employment of the method of competition or the act or practice was a willful or knowing violation of said section two. For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence . . . ."[15]

"There is general consensus among courts and commentators that the 1989 amendment was intended to increase the potential penalties for insurers who engaged in unfair claim settlement practices, in response to the Bertassi-Wallace-Trempe line of cases." Rhodes v. AIG Domestic Claims, Inc., supra at 498, and cases cited. See R.W. Granger & Sons v. J & S Insulation, Inc., 435 Mass. 66, 82-83 & n.21 (2001). The amendment "expanded the base on which multiple damages may be awarded." Drywall Sys., Inc. v. ZVI Constr. Co., 435 Mass. 664, 669 (2002). The general

---

[15] The emphasized sentence also was added to G. L. c. 93A, § 9 (3). See St. 1989, c. 580, § 1.

rule, as provided by the first sentence of the quoted language, is that "single recovery shall be 'the amount of actual damages,' meaning the (foreseeable) loss to the claimant caused by the violation, this amount to be doubled or tripled where the violation was in bad faith." Kapp v. Arbella Mut. Ins. Co., supra at 685, quoting Yeagle v. Aetna Cas. & Sur. Co., 42 Mass. App. Ct. 650, 653 (1997). The second sentence, inserted by the amendment, sets forth an exception to the general rule, applicable "in the particular situation where a claimant has recovered a judgment on the underlying claim." Kapp v. Arbella Mut. Ins. Co., supra, quoting Yeagle v. Aetna Cas. & Sur. Co., supra. In that situation, the entire amount of the judgment will form the basis for multiplication, even if the judgment represents more than the amount of actual damages attributable to a defendant's G. L. c. 93A violation. See Kapp v. Arbella Mut. Ins. Co., supra at 685-686

The point is illustrated in cases involving personal injury claims under insurance policies, where the insurer fails to effectuate a prompt settlement after liability has become reasonably clear, in violation of G. L. c. 176D, § 3 (9) (f). See, e.g., Rhodes v. AIG Domestic Claims, Inc., supra at 497-498. In such cases, an insurer's unreasonable delay in settling a valid claim may cause a claimant to resort to litigation, and ultimately may result in the claimant's securing a judgment

against the insurer.  That judgment usually will provide an amount due under an insurance policy as a result of a covered event such as an automobile accident.  In that event, the amount of the judgment corresponds to damages sustained due to the conduct of a third party, e.g., a negligent driver, but does not represent the actual damages incurred by the claimant as the result of the insurer's unfair or deceptive act or practice of unreasonably delaying in settling the claim.[16]  See, e.g., id. at 492-493.  Nonetheless, by virtue of the 1989 amendment, if the insurer is determined to have engaged in wilful or knowing misconduct, the entire amount of the judgment is to be multiplied, as "a stiff penalty . . . on defendants who knowingly or wilfully fail to settle claims where liability on an underlying claim is clear."  R.W. Granger & Sons v. J & S Insulation, Inc., supra at 85.  See Clegg v. Butler, supra at 425 (provision for multiplication of judgment "intended to penalize insurers who unreasonably and unfairly force claimants into litigation by wrongfully withholding insurance proceeds").

However, where no judgment has entered establishing a defendant's monetary liability because, for example, the parties have reached a settlement regarding an amount due under an insurance policy, the provision added by the 1989 amendment

---

[16] In such circumstances, the actual damages attributable to the insurer's conduct generally constitute loss of use damages.  See Clegg v. Butler, 424 Mass. 413, 425 (1997).

pertaining to multiplication of the amount of the judgment has no application.[17] See Rhodes v. AIG Domestic Claims, Inc., supra at 499 n.19. Nevertheless, in such circumstances, the absence of a judgment does not preclude recovery under G. L. c. 93A; rather, the first sentence of § 11, fifth par., governs. That language provides that a successful plaintiff's "recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount" upon a finding of wilful or knowing misconduct. Thus, where no prior judgment has entered, a plaintiff's actual damages, i.e., "all foreseeable and consequential damages arising out of conduct which violates the statute," Brown v. LeClair, 20 Mass. App. Ct. 976, 979 (1985), citing DiMarzo v. American Mut. Ins. Co., 389 Mass. 85, 101 (1983), form the basis of recovery. See Rhodes v. AIG Domestic Claims, Inc., supra at 499 n.19.

In cases where no judgment has entered, the amount of damages recoverable pursuant to G. L. c. 93A therefore will depend on the nature and extent of actual damages flowing from

---

[17] Similarly, where parties submit to arbitration a claim for reimbursement under an insurance policy, the ensuing arbitral award does not constitute a "judgment"; as such, the amount of the award is not subject to multiplication in any ensuing G. L. c. 93A action. See Bonofiglio v. Commercial Union Ins. Co., 411 Mass. 31, 37-38 (1991), S.C., 412 Mass. 612 (1992). An arbitrator retains authority, however, to award multiple damages in G. L. c. 93A cases brought before him or her. See Drywall Sys., Inc. v. ZVI Constr. Co., 435 Mass. 664, 669 (2002).

the statutory violation at issue.  Where the conduct alleged to violate G. L. c. 93A is an unreasonable delay in settling a claim arising under an insurance policy, we have held that a plaintiff's actual damages generally comprise "the interest lost on the money wrongfully withheld by the insurer."[18]  See Clegg v. Butler, supra at 425, quoting S. Young, Chapter 93A and the Insurance Industry § 14.19, Chapter 93A Rights and Remedies (Mass. Cont. Legal Educ. 1996 & Supp. 1996).  Here, however, the alleged violation of G. L. c. 93A is not a failure to effectuate a prompt settlement, but a breach of the duty to defend. Damages arising from a breach of the duty to defend may encompass out-of-pocket expenses incurred by the plaintiff, in addition to interest; a breaching insurer will be liable for all "natural consequences of [the breach] that places its insured in a worse position," including, in appropriate circumstances, the amount of the settlement reached in the underlying litigation. See Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 764 (1993).

---

[18] There is no indication in the record that the parties expressly agreed to settle Auto Flat's breach of contract claim arising out of the breach of the duty to defend, see note 9, supra, but nothing turns on this point.  Even had the contract claims been settled, Auto Flat's G. L. c. 93A claim would not be precluded; rather, Auto Flat still would be permitted to seek recovery of its actual damages under § 11, provided it had not agreed to release its G. L. c. 93A claim.  There was no such release here, however, and the parties clearly did not agree to settle the G. L. c. 93A claim.

Accordingly, Auto Flat may proceed with its G. L. c. 93A claim notwithstanding the absence of a judgment in its favor establishing the amount of contract damages incurred. Discovery as to the G. L. c. 93A claim presumably will take place, and, if this matter proceeds to trial, Auto Flat may offer evidence of "all foreseeable and consequential damages" it contends were caused by Hanover's asserted unfair or deceptive act or practice arising from its refusal and failure to provide a defense in the DEP litigation.[19] Brown v. LeClair, supra, citing DiMarzo v. American Mut. Ins. Co., supra. If Auto Flat establishes that Hanover's breach of the duty to defend constituted a wilful or knowing statutory violation, the amount of actual damages proven to flow from that breach will form the basis for multiplication. Any award of damages will be reduced by the amount that Auto Flat already has accepted from Hanover;[20] such offset is to be

---

[19] Acknowledging that the amount of money it received from Hanover is equivalent to the amount of actual damages it suffered as a result of Hanover's breach of the duty to defend, Auto Flat apparently does not claim that it has sustained other consequential damages that remain uncompensated. In proving its actual damages, Auto Flat must in any event establish that the amounts it recovered from Hanover are in compensation for expenses incurred as a result of the breach of the duty to defend on which its G. L. c. 93A claim is solely predicated.

[20] As has been noted, Auto Flat does not claim that it suffered damages beyond the amount compensated by Hanover. See note 19, supra. Thus, if Auto Flat successfully proves a G. L. c. 93A violation but fails to demonstrate that the violation was wilful or knowing, such that it is awarded single damages only,

applied <u>after</u> multiplying Auto Flat's actual damages, if

appropriate.[21]

Because neither entry of a judgment nor the existence of

uncompensated loss is a prerequisite to recovery under G. L.

c. 93A, Hanover has not met its burden of demonstrating that

Auto Flat lacks a reasonable expectation of proving an essential

---

the balance after setting off the amount of Hanover's payments
will be zero, not including attorney's fees and costs.

[21] For example, in <u>Wolfberg</u> v. <u>Hunter</u>, 385 Mass. 390, 391,
397 (1982), tenants withheld rent after their landlord failed to
remedy certain defects in their apartment, and subsequently sent
the landlord a demand letter pursuant to G. L. c. 93A, § 9 (3).
A judge found that the landlord had violated G. L. c. 93A, and
that his response to the demand letter was not made in good
faith, warranting double damages pursuant to G. L. c. 93A, § 9.
<u>Id</u>. at 397.  We held that the tenants were entitled to double
their actual damages -- comprising the difference between the
agreed-upon rent and the value of the apartment with defects,
plus reasonable expenses -- to be offset, after multiplication,
by the amount of rent withheld.  <u>Id</u>. at 399-400.  We calculated
the damages as follows:

> "[T]he agreed rent for five months ($330 times
> five, or $1,650) minus the sum of the fair market
> value of the apartment, as found for each of those
> five months ($525), equals $1,125.  To this figure is
> added the tenants' reasonable expenses ($195), and the
> sum is doubled, since the judge found that the
> landlord's response to the tenants' G. L. c. 93A
> demand letter was not made in good faith, for a total
> of $2,640.  From this amount, the rent withheld by the
> tenants ($990) is deducted. The tenants' damage award
> with respect to their G. L. c. 93A counterclaim is
> therefore $1,650."

<u>Id</u>. at 400.  See <u>Ameripride Linen & Apparel Servs., Inc.</u> v. <u>Eat
Well, Inc.</u>, 65 Mass. App. Ct. 63, 68-70 (2005); <u>Friendly Fruit,
Inc.</u> v. <u>Sodexho, Inc.</u>, 529 F. Supp. 2d 158, 166 (D. Mass. 2007).
Cf. <u>United States</u> v. <u>Bornstein</u>, 423 U.S. 303, 316 (1976).

element of its case, and the denial of Hanover's motion for partial summary judgment on count 5 was proper. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

b. Partial summary judgment on claims for breach of contract and duty to indemnify (counts 2 through 4). As discussed, the second judge allowed Hanover's motion for partial summary judgment on the claims alleging breach of contract for failure to defend, seeking a declaration regarding Hanover's duty to indemnify, and asserting contract damages as a result of the failure to indemnify. In allowing the motion, the judge accepted Hanover's argument that the claims should be dismissed because all damages had been paid, noting that, "[a]fter summary judgment was allowed on [c]ount 1 in favor of the plaintiffs, the defendant paid the cost to clean up together with [twelve per cent] interest per annum beginning on the various dates on which the damage occurred."

At the time of Hanover's motion for partial summary judgment on counts 2 through 4, a declaration already had entered holding that Hanover had a duty to defend Auto Flat in the then-concluded DEP litigation. Insofar as Hanover had declined to defend Auto Flat to that point, and instead had "disclaimed a duty to defend without first obtaining a judicial declaration," Metropolitan Prop. & Cas. Ins. Co. v. Morrison,

460 Mass. 352, 359 (2011), Hanover stood in breach of its duty. See Deutsche Bank Nat'l Ass'n v. First Am. Title Ins. Co., 465 Mass. 741, 745 (2013), citing Metropolitan Prop. & Cas. Ins. Co. v. Morrison, supra at 358-359 ("Any uncertainty as to whether the pleadings include or are reasonably susceptible to an interpretation that they include a claim covered by the policy terms is resolved in favor of the insured, and the insurer must undertake the defense until it obtains a declaratory judgment of no coverage"); Sterilite Corp. v. Continental Cas. Co., 17 Mass. App. Ct. 316, 324 (1983) (insurer who evades duty to defend, which arises on face of complaint and policy, "by dint of its own assertion that there is no coverage . . . stands in breach of its duty").

Thus, when the motion for partial summary judgment was filed, and on the record before the judge, the only material issue of fact in dispute as to the claim alleging breach of contract for failure to defend (count 2) was the amount of damages for which Hanover was liable; Hanover's liability for breach of contract otherwise had been established. See Metropolitan Prop. & Cas. Ins. Co. v. Morrison, supra at 359, citing Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 763 (1993) ("a breach of the duty to defend is a breach of the insurance contract, and the insured is entitled to contract damages caused by the breach").

On the limited record before us, it is not entirely clear whether, at the time of the motion, the parties agreed on the amount of contract damages attributable to Hanover's breach of the duty to defend, and the extent to which that amount had been offered and accepted without qualification. Were this a material issue of fact in dispute, as it appears, summary judgment on count 2 well may have been allowed in error. We need not linger on this possibility, however, since it is plain that the parties are now in agreement that Auto Flat has accepted Hanover's payments in full reimbursement for expenses resulting from the breach of the duty to defend. "Such acceptance removes the 'foundation of [a potential contract] suit' and necessitates the dismissal of a suit already commenced." Barron Chiropractic & Rehabilitation, P.C. v. Norfolk & Dedham Group, ante    ,    n.11(2014), quoting Davis v. Harrington, 160 Mass. 278, 280 (1894). Because "[t]he dispute over [contract] damages . . . ha[s] been resolved," Murphy v. National Union Fire Ins. Co., 438 Mass. 529, 533 (2003), the claim for contractual damages for breach of contract for failure to defend must be dismissed.[22]

---

[22] Auto Flat has not presented arguments in its brief concerning the propriety of the allowance of Hanover's motion for partial summary judgment on the claims pertaining to the duty to indemnify (counts 3 and 4). As this issue has not been substantively addressed on appeal, it is deemed waived. See

3.  Conclusion.  For the foregoing reasons, the portion of the judgment allowing Hanover's motion for partial summary judgment on count 2 is vacated and the case is remanded for entry of an order dismissing that count.  The remaining portions of the judgment allowing Hanover's motion for partial summary judgment on counts 3 and 4, and the judgment denying Hanover's motion for partial summary judgment on count 5, are affirmed.

So ordered.

---

Mass. R.A.P. 16 (a) (4), as amended, 367 Mass. 921 (1975); U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 426 n.10 (2014).