NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-916                                        Appeals Court

AGGREGATE INDUSTRIES - NORTHEAST REGION, INC.  vs.  HUGO KEY AND
                  SONS, INC., & another.[1]


                        No. 15-P-916.

        Essex.    April 13, 2016. - September 1, 2016.

        Present:  Wolohojian, Kinder, & Neyman, JJ.

Contract, Construction contract, Offer and acceptance,
     Performance and breach, Public works.  Damages, Quantum
     meruit, Public Works Contract.  Bond, Public works.  Public
     Works, Payment bond.  Consumer Protection Act,
     Businessman's claim, Unfair or deceptive act.  Practice,
     Civil, Attorney's fees.



     Civil action commenced in the Superior Court Department on
October 31, 2011.

     The case was heard by Timothy Q. Feeley, J., and a motion
for a new trial was considered by him.


     Cole M. Young for the plaintiffs.
     William T. Harrington for the defendants.


     WOLOHOJIAN, J.  The plaintiff subcontractor, Aggregate

Industries - Northeast Region, Inc. (Aggregate), contracted with

_____

     [1] Argonaut Insurance Company, which is not participating in
this appeal.

the defendant general contractor, Hugo Key and Sons, Inc. (Hugo Key), for the supply of material and labor for a public works construction project in Salem. A dispute arose about payment, and Aggregate filed a complaint in the Superior Court asserting contract and quantum meruit claims under G. L. c. 149, § 29, the Commonwealth's bond statute for publicly funded construction projects, and violations of G. L. c. 93A (c. 93A). Following a jury-waived trial, judgment entered in favor of Hugo Key on all counts of the complaint, with the exception of a discreet quantum meruit award, not under the bond statute, in favor of Aggregate. Judgment also entered in favor of Hugo Key on a c. 93A counterclaim. Aggregate appeals, claiming the judge erred in his application of contract principles and in his analysis of the statutes at issue. We affirm in part, and reverse in part.

Background. We summarize the facts as found by the judge, supplemented by undisputed information from the record. In 2011, Hugo Key and Salem entered into a contract for the construction of the Salem Wharf project. The contract was secured by a payment bond in the amount of $1,336,925, furnished by the defendant Argonaut Insurance Company (Argonaut). Hugo Key, in turn, solicited bids from subcontractors for the portion of the project that required bituminous concrete pavement work. On or about January 14, 2011, Aggregate submitted an estimate

for the pavement work, which included two provisions relevant to the present dispute. The first stated: "Grader Service: $400.00/HR." The second was an escalation clause, which provided for additional per ton charges for bituminous concrete if the base price of liquid asphalt[2] increased.[3] Aggregate submitted two revised estimates in May, 2011. Hugo Key did not sign or accept any of the estimates, and its representative, Sandy Key, informed the Aggregate salesman, Vincent Venturo, "that Hugo Key would not deal with Aggregate if the agreement included an escalation clause for liquid asphalt."

Having reached no agreement, Hugo Key sent Aggregate a purchase order dated May 17, 2011, that included the revised estimate, but was silent as to grader service and the escalation clause. Venturo signed the purchase order and returned it by fax with a handwritten notation attempting to incorporate the escalation clause into the agreement.[4] In response, Sandy Key

---

[2] Bituminous concrete paving material is a mixture of asphalt, crushed rock aggregate, and mineral filler.

[3] The estimate provided: "Prices quoted are based on the current FOB refinery prices on liquid asphalt. Such quoted prices are not guaranteed by the major oil companies and are subject to sudden adjustment during the term of the agreement. The base price of liquid asphalt for this quote is [$]460.00. Any change in the price of liquid asphalt will require an extra charge of $0.06 per ton for every $1.00 per ton increase in the price of liquid asphalt."

[4] The notation stated: "As Per Estimate #14536-2011 Terms & Conditions."

immediately rejected the term; the trial judge found that "Sandy Key told Venturo, and Venturo knew, that if Aggregate insisted on the escalation clause, Hugo Key would not give Aggregate the pavement work." Sandy Key then prepared a new purchase order dated May 23, 2011, removing Venturo's handwritten addition and adding "Purchase order based on liquid asphalt price of $460.00 per ton" for the express purpose of excluding the escalation clause. With the approval of his manager, Venturo signed and accepted the purchase order and work commenced. During the paving project, Hugo Key determined that it required grading services from Aggregate, which Aggregate performed, and then billed at the price, quoted on the original estimate, of $400 per hour.

After completion of the project, by invoice dated July 6, 2011, Aggregate billed Hugo Key $89,989.90. Of that sum, $11,400 was for "grader rental" and $10,064.50 was for "liquid asphalt escalation." Having received no payment, on October 31, 2011, Aggregate commenced the present action. The complaint alleges claims for breach of contract and quantum meruit, with payment under the bond statute, G. L. c. 149, § 29, and violations of c. 93A for the wrongful withholding of the funds due. Shortly after the complaint was filed, by check dated November 8, 2011, Hugo Key paid Aggregate $68,525.40, the sum not in dispute, and indicated a willingness to pay a reasonable

fee for the grader rental.[5]  Aggregate refused the offer of payment, and Hugo Key filed a counterclaim alleging violations of c. 93A.

Following a one-day bench trial, the judge issued his written findings of fact and conclusions of law.  He concluded that the contract formed between Aggregate and Hugo Key did not incorporate the escalation clause or the grader rental fee, but that Aggregate was entitled to the fair and reasonable sum of $7,125 on its quantum meruit claim for grader rental.  Nevertheless, the judge dismissed the portions of the complaint seeking recovery under G. L. c. 149, § 29, reasoning that "[f]airness would be the victim if this court permitted Aggregate to recover under the bond, with its right to attorneys' fees, on a quantum meruit claim that Hugo Key was ready, willing, and able to resolve at the fair and reasonable value of the services provided at or about the time this action was commenced."  As for the competing c. 93A claims, the judge found in favor of Hugo Key, on the ground that Aggregate commenced the present litigation as a form of extortion, by means of the attorney's fee provision of G. L. c. 149, § 29, to force Hugo Key to pay for the escalation clause that it knew was not a part of the contract.  Rather than awarding damages on the

_____

[5] Key testified that $220 per hour would be a reasonable fee.

c. 93A judgment, however, the judge withheld the prejudgment and postjudgment interest on Aggregate's $7,125 quantum meruit award. Aggregate moved for a new trial, which the judge denied without a hearing. On Hugo Key's motion for c. 93A attorney's fees and costs, the judge awarded a total of $67,319.

Discussion. We review the trial judge's findings of fact, including all reasonable inferences that are supported by the evidence, for clear error. See Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 445 Mass. 411, 420 (2005); Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996). The judge's conclusions of law are reviewed de novo. Martin v. Simmons Properties, LLC, 467 Mass. 1, 8 (2014).

1. Breach of contract. Based on the undisputed evidence of Sandy Key and Venturo's ongoing verbal and written negotiations, offers, and counter offers, the judge reasonably concluded that no binding contract was formed until Venturo accepted, on behalf of Aggregate, Sandy Key's final May 23, 2011, purchase order. Looking at the same evidence, the judge also reasonably concluded that the escalation and grader rental terms had been rejected and were not to be read into the final agreement. In other words, the parties expressed no mutual intention to bind themselves until the acceptance of the terms

limited to the May 23, 2011, purchase order.[6]  See Situation

Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000).  As

Hugo Key paid the agreed upon amount due under the final terms

of the agreement, no breach of contract occurred.  Count I of

the complaint, alleging nonpayment under the invoice, was

properly dismissed.

2.  Application of G. L. c. 149, § 29.  Aggregate claims

that once the judge determined that it was owed damages on its

quantum meruit claim for the grader rental, the provisions of

G. L. c. 149, § 29, including an award of attorney's fees, must

apply to the claim, as all of the requirements of the statute

had been satisfied.  We agree.

The bond statute, G. L. c. 149, § 29, which is an outgrowth

of the mechanic's lien statutes, requires that general

contractors obtain "security in favor of those furnishing labor

and materials in the construction or repair of public structures

and other public works, . . . as there can be no lien upon

public buildings or other public works."  Massachusetts Gas &

Elec. Light Supply Co. v. Rugo Constr. Co., 321 Mass. 20, 22

(1947) (citation omitted).  Because the purpose of the statute

---

[6] As the judge noted, the result is the same under the
Uniform Commercial Code, as Hugo Key had expressly rejected the
two estimates offered, and, thus, there was no "definite and
seasonable expression of acceptance" of a contract including the
disputed terms.  G. L. c. 106, § 2-207, inserted by St. 1957,
c. 765, § 1.  See generally Commerce & Indus. Ins. Co. v. Bayer
Corp., 433 Mass. 388, 392-393 (2001).

is remedial in nature, it is to be construed liberally in favor of providing such security to subcontractors and materialmen. City Rentals, LLC v. BBC Co., 79 Mass. App. Ct. 559, 564 (2011). In furtherance of that purpose, successful claimants under the statute are entitled to "reasonable legal fees based upon the time spent and the results accomplished." G. L. c. 149, § 29, inserted by St. 1972, c. 774, § 5. See City Rentals, LLC v. BBC Co., supra at 566, quoting from Manganaro Drywall, Inc. v. White Constr. Co., 372 Mass. 661, 664 (1977) ("The fee-shifting provision of § 29 'places the expense of litigation on a contractor and a surety who decline to pay a rightful claim [and] tends to achieve the legislative goal of expeditious payments to subcontractors'").

As relevant here, the requirements to be met and the actions to be taken in commencing an action for payment under G. L. c. 149, § 29, are straightforward. The statute provides, in pertinent part:

> "In order to obtain the benefit of such bond for any amount claimed due and unpaid at any time, any claimant having a contractual relationship with the contractor principal furnishing the bond, who has not been paid in full for any amount claimed due for the labor, materials, equipment, appliances or transportation included in the paragraph (1) coverage within sixty-five days after the due date for same, shall have the right to enforce any such claim (a) by filing a petition in equity within one year after the day on which such claimant last performed the labor or furnished the labor, materials, equipment, appliances or transportation included in the claim and (b) by

> prosecuting the claim thereafter by trial in the superior court to final adjudication and execution for the sums justly due the claimant as provided in this section."

G. L. c. 149, § 29, inserted by St. 1972, c. 774, § 5. If successful, "[a] decree in favor of any claimant under this section shall include reasonable legal fees based upon the time spent and the results accomplished." Ibid.

Here, Aggregate plainly met the requirements of: (1) filing a petition in equity in the Superior Court; (2) within one year of the completion of the work; (3) alleging nonpayment within sixty-five days of the invoice for labor and materials provided; and (4) prosecuting the claim "to final adjudication and execution for the sums justly due the claimant as provided in this section." G. L. c. 149, § 29, inserted by St. 1972, c. 774, § 5. It necessarily follows that, having achieved a decree in its favor on its quantum meruit claim, Aggregate is entitled to reasonable attorney's fees under the plain and compulsory ("shall") language of the statute. The judge accordingly erred in ordering dismissal of the portion of Aggregate's complaint alleging recovery under G. L. c. 149, § 29, on its quantum meruit claim.[7]

---

[7] The judge placed too much weight on the "petition in equity" language of the statute to support his rejection of the G. L. c. 149, § 29, claim on fairness grounds. The phrase appears to be merely a vestige of the procedural landscape in existence at the time the statute was enacted. The bond statute

3.  Chapter 93A counterclaim.  Aggregate claims that its actions in refusing to negotiate with Hugo Key on the grader rental fee and the escalation clause, and in later filing suit to recover the disputed amount, did not constitute unfair or deceptive acts or practices in the course of trade or commerce. Again, we agree.

Chapter 93A, § 11, "bestows a right of action on '[a]ny person who engages in the conduct of any trade or commerce and who suffers any loss of money or property, real or personal,' as a result of the unfair or deceptive act or practice, or unfair method of competition, of another person who engaged in trade or

_____

was enacted in 1904, see St. 1904, c. 349, well before the adoption of the rules of civil procedure in Massachusetts in 1973, which merged the procedure for bringing suits in equity and at law.  See Nolan & Sartorio, Equitable Remedies § 4.15 (3d ed. 2007).  Prior to their adoption, separate and distinct complaints at law and in equity were required depending on the relief sought.  See Reporter's Notes to Mass.R.Civ.P. 2, 46 Mass. Gen. Laws Ann. at 11 (West 2006).  In sum, the phrase "petition in equity" made sense within the procedural landscape of the time, but, in the present day, is best understood simply to refer to the commencement of an action under G. L. c. 149, § 29.

Our conclusion in this regard is consistent with the history of the same phrase in the mechanic's lien statute, G. L. c. 254, § 14, which predates the bond statute at issue here.  In the mechanic's lien statute, the language was replaced with the phrase "civil action commenced" by legislation dated November 30, 1973, entitled "An Act improving the procedure in civil trials and appeals."  St. 1973, c. 1114, § 320.  See NES Rentals v. Maine Drilling & Blasting, Inc., 465 Mass. 856, 863 (2013). "This act derived from 1973 House Doc. No. 7236, a bill intended 'to conform the General Laws of Massachusetts to the Massachusetts rules of civil procedure and the Massachusetts rules of appellate procedure.'"  Ibid.

commerce."  Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.,
469 Mass. 813, 822 (2014), quoting from G. L. c. 93A, § 11.

Hugo Key's counterclaim alleges that Aggregate committed
unfair and deceptive acts by demanding payment under the
contract and filing suit and continuing to prosecute its claim
over the disputed amount.  Ordinary contract disputes, or the
failure to negotiate a settlement in lieu of ligation, however,
typically fall outside of the reach of the statute.  See
Duclersaint v. Federal Natl. Mort. Assn., 427 Mass. 809, 814
(1998) ("[A] good faith dispute as to whether money is owed, or
performance of some kind is due, is not the stuff of which a
c. 93A claim is made"); Morrison v. Toys "R" Us, Inc., Mass.,
441 Mass. 451, 457 (2004) (with the exception of insurance
providers, c. 93A "has never been read so broadly as to
establish an independent remedy for unfair or deceptive dealings
in the context of litigation"); Kobayashi v. Orion Ventures,
Inc., 42 Mass. App. Ct. 492, 505 (1997) (ordinary contract
disputes, "without conduct that was unethical, immoral, [or]
oppressive," are not actionable under c. 93A).  This is so
because the unfair or deceptive conduct alleged must itself
arise from trade or commerce, and not tangentially from
litigation concerning that conduct.  See First Enterprises, Ltd.
v. Cooper, 425 Mass. 344, 347 (1997).

Hugo Key's counterclaim falls squarely in the above category. Even if Aggregate's claims were weak, it was free to file suit and litigate them. To reach the opposite conclusion, rather than furthering the purpose of c. 93A by "improv[ing] the commercial relationship between consumers and business persons and [] encourag[ing] more equitable behavior in the marketplace[,] . . . would expose ordinary defendants (even large corporations . . .) to the risk of liability for multiple damages and attorney's fees for choosing to go to court rather than settling a dispute, on the ground that its litigation tactics are perceived, by the opposing side, to be unfair." Morrison v. Toys "R" Us, Inc., Mass., supra at 457-458 (citations omitted). The counterclaim should have been dismissed.

Conclusion. The judgment, dated March 10, 2015, is affirmed as to counts I and III of Aggregate's complaint and as to count II insofar as the judgment awards damages in the amount of $7,125 on Aggregate's quantum meruit claim. The judgment is reversed in all other respects. The case is remanded to the Superior Court for entry of judgment in favor of Aggregate, and against Hugo Key and Argonaut,[8] on Aggregate's G. L. c. 149,

---

[8] Under the payment bond contract, Hugo Key and Argonaut are "jointly and severally" liable for any sums owed. See John W. Egan Co. v. Major Constr. Mgmt. Corp., 46 Mass. App. Ct 643, 646-647 (1999).

§ 29, claim related to the quantum meruit award, including prejudgment and postjudgment interest,[9] and an award of reasonable attorney's fees and costs.  Judgment shall enter dismissing Hugo Key's c. 93A counterclaim, and the judgment, dated June 1, 2015, awarding attorney's fees and costs to Hugo Key on its c. 93A counterclaim is vacated.

<u>So ordered</u>.

---

[9] See G. L. c. 231, § 6C.